**UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION**

```
------------------------------------------------------- x
In re:                                                  :   Chapter 11
                                                        :
John Joseph Louis Johnson, III,                         :   Case No. 2:14-bk-57104
                                                        :
               Debtor.                                  :   Judge John E. Hoffman, Jr.
                                                        :
------------------------------------------------------- x
```

**APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER
AUTHORIZING DEBTOR AND DEBTOR-IN-POSSESSION TO RETAIN AND
EMPLOY TRI STAR SPORTS & ENTERTAINMENT AS FINANCIAL ADVISOR,
NUNC PRO TUNC AS OF THE PETITION DATE**

John Joseph Louis Johnson III, an individual ("Debtor" or "Johnson"), by and through his undersigned counsel, hereby applies (the "Application"), pursuant to sections 328 and 1103 of title 11 of the United States Code (the "Bankruptcy Code") and Rules 2014(a) and 6003(a) of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), for the entry of an order authorizing Debtor to retain and employ Tri Star Sports & Entertainment ("Tri Star") as financial advisor to Debtor *nunc pro tunc* as of the Petition Date in this Chapter 11 case (the "Case"). In support of this Application, Debtor will submit a *Verified Declaration in Support of the Debtor's Application for Order Authorizing Debtor to Retain and Employ Tri Star Sports & Entertainment as Financial Advisor Nunc Pro Tunc as of the Petition Date*, and respectfully represents as follows:

**JURISDICTION**

1. The Court has jurisdiction over this Application pursuant to 28 U.S.C. §§157 and 1334. Consideration of the Application is a core proceeding pursuant to 28 U.S.C. §157(b)(2).

2. Venue is proper in this district pursuant to 28 U.S.C. §§1408 and 1409.

6899513.1

3.      The statutory predicates for the relief requested herein are section 328 of the Bankruptcy Code and Bankruptcy Rules 2014(a) and 6003(a).

## BACKGROUND

4.      On October 7, 2014 (the "Petition Date"), Debtor filed his voluntary petition for relief under Chapter 11 of the Bankruptcy Code.

5.      No trustee, examiner or official committee of unsecured creditors has been appointed.

### *Events Leading to the Chapter 11 Filing*

      **A.**     **Johnson Finds Success As A Professional Hockey Player.**

6.      Johnson was born in 1987 in Indianapolis, Indiana. In July 2005, following two years with the USA Hockey National Team Development Program, Johnson was selected third overall by the Carolina Hurricanes of the National Hockey League (NHL) in the 2005 NHL Entry Draft. After a year playing Division I NCAA hockey at the University of Michigan in the Central Collegiate Hockey Association, Johnson's rights were traded to the Los Angeles Kings in September 2006. Johnson would play another year at Michigan before signing his first professional contract with the Kings in March 2007.

7.      On January 8, 2011, a mere four years into a successful career with the Los Angeles Kings, Johnson signed a new Player Contract, a $30.5 million, seven-year extension with the Kings.

8.      In February 2012, Johnson was traded to the Columbus Blue Jackets, after five seasons in Los Angeles with the Kings. In addition to his success in the NHL, Johnson has represented the United States on the international stage multiple times, most notably playing for Team USA at the 2010 Winter Olympics in Vancouver.

      **B.**      **Johnson's Trust In His Family And Accomplishments Makes Him Prey.**

      9.      The life of a professional hockey player involves frequent travel, intense competition, and rigorous training.  The NHL is widely considered to be the premier professional ice hockey league in the world and one of the major North American professional sports leagues.  The hockey season (including pre-season games) generally runs from September through April each year, with the playoffs extending into June.  During the regular season, each of the thirty teams in the NHL play an 82 game season which determines its standing.  The Stanley Cup, the oldest professional sports trophy in North America, is awarded annually to the league playoff champion at the end of each season.

      10.      Johnson's life and schedule as a professional athlete made it difficult for him to manage his financial affairs on a day to day basis.  Furthermore, as a young player with his first professional contract in 2007, Johnson lacked experience in money management, investments or loan transactions.

      11.      Well aware, however, that his career as a professional athlete would very likely not extend the 20 or 30 years of a more typical career, Johnson wanted his earnings invested carefully with an eye to making that money last for his lifetime.  Johnson's mother and father managed his financial affairs from the time he was a minor and throughout his professional career.

      **C.**      **Purported Creditors Take Advantage Of Johnson.**

      12.      The filing of this Case precipitated from a course of egregious, unethical and wrongful conduct by his financial advisors and certain purported creditors in a systematic, deliberate and predatory lending and investment scheme whereby they lined their own pockets at the expense and detriment of Johnson.

13. Beginning in or about early 2011 and through 2013, unbeknownst to Johnson, his advisors and certain purported creditors brokered a series of unconventional loans to Johnson's advisor, making Johnson the obligor and pledging his $30.5 million NHL Player Contract as security. Plain and simple, the purported creditors entered into these extraordinarily unconscionable and usurious loans without taking any reasonable steps to ensure that Johnson was personally aware of the transactions, that he authorized them, or that he would benefit from them. Johnson knew nothing about these loans and to his knowledge personally received no monies.

14. In order to facilitate the making of such predatory loans and investments, his advisors and certain purported creditors fraudulently conspired to acquire from Johnson certain powers of attorney. Many of the underlying loan documents from the debt at issue were executed pursuant to (1) fraudulently induced powers of attorney;(2) under circumstances where Johnson was provided only the signature page of a particular loan document; or (3) where someone else fraudulently signed the document without his knowledge or authority. .

15. Certain purported creditors and his advisors, knew that Johnson was a professional hockey player and was not overseeing these transactions.

16. The purported creditors, brokers and investors learned from their dealings with Johnson's advisors that Johnson and his advisors were not sophisticated financial managers and had no formal training in the management of financial affairs, loans, investments or banking in general. Nevertheless, they preyed upon Johnson. Unbeknownst to Johnson, the purported creditors convinced Johnson's advisors that unconventional loans with hidden exorbitant usury rates of interest, in at least one instance in excess of 42%, fees, and charges secured by Johnson's $30.5 million NHL Player Contract were the best financial vehicles to procure monies to

4

purchase both real and personal property for primarily his advisors and creditors' benefit and use.

17. The purported advisors and creditors took advantage of Johnson and, for that matter, his advisors' financial inexperience and naiveté to use Johnson's money without telling him.

18. As a result of the predatory lending and investment schemes, Johnson now purportedly owes in excess of $12 million and has been named as a defendant in numerous lawsuits seeking to collect on these predatory loans and investments.

19. The cost to defend such litigation and make payments pursuant to certain garnishment orders and onerous settlement agreements obtained by the purported creditors and agreed to by his advisors created a liquidity crisis for Johnson necessitating his petition for relief under Chapter 11 of the Bankruptcy Code.

## RELIEF REQUESTED

20. By this Application, Debtor seeks entry of an order authorizing the employment and retention of Tri Star as financial advisor to Debtor, *nunc pro tunc* to the Petition Date, in accordance with sections 328 and 1103 of the Bankruptcy Code and Rules 2014(a) and 6003(a) of the Bankruptcy Rules.

## BASIS FOR RELIEF

21. Debtor seeks to retain Tri Star as financial advisor because, among other things, Tri Star and its professionals have the skill necessary to provide high quality services to professional athlete debtors, generally and in this Chapter 11 reorganization. Tri Star has a proven track record working with professional athletes, their creditors and lenders in addressing distressed debt situations. A sampling of Tri Star's services includes business management,

accounting services, oversight of clients' agreements and payment terms, in addition to its tax, estate, and financial planning services.

22. During the prepetition period since Tri Star's engagement by Debtor, since June 13, 2014, Tri Star professionals have worked closely with Debtor and his other professionals to become well-acquainted with Debtor's career as a professional hockey player, the claims of his alleged creditors, his business ventures, and his other related matters. Tri Star also has developed knowledge of Debtor's financial history, how he has been placed into this position and has worked to prepare Debtor to file this Case. Tri Star has developed significant relevant experience and expertise regarding Debtor that will assist it in providing effective and efficient services in this Case.

23. The resources, capabilities and experience of Tri Star in advising professional athletes are crucial to Debtor's successful reorganization. Tri Star fulfills a critical need that complements the services offered by Debtor's other restructuring professionals. Neither law firms nor traditional accounting firms have the experience or resources to do the type of work detailed below required by Debtor as a professional athlete. Accordingly, authorizing the relief requested herein is appropriate in this Case.

    **D.**    **Services to be Provided by Tri Star**

24. Tri Star will provide the following services, among others:

    (a)    Assisting in the restructuring efforts of Debtor;

    (b)    Assisting Debtor with management of his cash flow, including but not limited to preparing, implementing and monitoring of budgets and paying monthly bills;

    (c)    Assisting Debtor with identifying new income sources, including but not limited to his marketing efforts to obtain branding and merchandising royalty income;

(d) Assisting Debtor in managing his assets, including both personal property and real property assets;

(e) Assisting in developing and implementing a restructuring plan including a Plan of Reorganization;

(f) If deemed appropriate, facilitating and managing the processes to sell, lease or license certain of Debtor's assets to raise new capital;

(g) Communicating and negotiating with Debtor's alleged lenders and creditors;

(h) Attend Court and other hearings, where necessary;

(i) Compiling and formatting financial information and other data and preparing analyses necessary and appropriate for this Chapter 11 case; and

(j) Other and further financial advisory and consulting services as mutually agreed to between the parties.

25. Debtor believes Tri Star is well qualified and able to provide the foregoing services to Debtor. Tri Star has indicated a willingness to act on behalf of Debtor on the terms described above and subject itself to the jurisdiction of the Court. If this Application is granted, Debtor's employment of Tri Star as described herein, will provide services to Debtor until such time as the parties determine that the services of Tri Star are no longer needed or the arrangement is otherwise terminated. Additionally, Tri Star agrees that it will endeavor to coordinate with the other retained professionals in this Case to eliminate unnecessary duplication or overlap of work.

**E.    Professional Compensation**

26. Tri Star's fees for professional services are based upon its engagement letter, which is attached hereto as Exhibit A.

27. Consistent with Tri Star's policy with respect to its other clients, and subject to Court order, Debtor will reimburse Tri Star upon receipt of periodic billings for all reasonable,

6899513.1

out-of-pocket expenses incurred in connection with this Case, including but not limited to, travel, mileage, accommodation, meals, telecommunication and postage. Charges and disbursements will comply with the United States Trustee's guidelines for fees and disbursements for professionals in bankruptcy cases.

28.  Tri Star has not shared or agreed to share any of its compensation from Debtor with any other persons, other than a managing director, professional or employee of Tri Star, as permitted by section 504 of the Bankruptcy Code.

### F. Tri Star's Relationship to Debtor

29.  To the best of Debtor's knowledge, information and belief, Tri Star has no connection with and holds no interest adverse to Debtor, his creditors, or any other party in interest, or their respective attorneys or accountants, or the Office of the United States Trustee or any person employed in the Office of the United States Trustee, in the matters for which Tri Star is proposed to be retained. Tri Star has reviewed the lists of Debtor's general unsecured creditors, Debtor's lenders, and other known parties in interest in this Case.

30.  Debtor initially retained Tri Star prior to the Petition Date as of June 13, 2014. Pursuant to that retention and during the period prior to the Petition Date, Debtor has paid Tri Star $53,317.25 in compensation and $32,437.70 in reimbursement for expenses incurred prior to the Petition Date. Accordingly, Tri Star is not a creditor of Debtor.

31.  To the best of Debtor's knowledge, Tri Star and its employees (i) are not creditors or insiders of Debtor and (ii) were not, within two years before the date of filing of Debtor's Chapter 11 petition, except as set forth herein, a director, officer or employee of Debtor.

32.  Debtor submits that the retention of Tri Star on the terms and conditions set forth herein is in the best interests of Debtor, his creditors and all parties-in-interest.

**G.     Prepetition Payments to Tri Star**

33.     In connection with the prepetition retention by Debtor, Tri Star received payments in the amount of $108,165.00 on or before October 7, 2014. Further, as of the Petition Date, Tri Star holds a Retainer in the amount of $54,847.75. Tri Star will request that the Chapter 11 Retainer be applied to compensation as permitted by this Court from time to time.

### RETENTION SHOULD BE APPROVED

34.     As described above, the retention of Tri Star would greatly benefit Debtor's estate and creditors. Tri Star has been involved in Debtor's reorganization and debt management efforts, and has been instrumental in helping Debtor position himself for a successful Chapter 11 proceeding.

35.     Debtor believes that Tri Star's fee structure is reasonable in light of (a) industry practice, (b) market rates charged for comparable services, (c) Tri Star's substantial experience with respect to financial management services for professional athletes, and (d) the nature and scope of work already performed by Tri Star prior to the Petition Date and to be performed by Tri Star in Debtor's Case.

### NOTICE

36.     Notice of this Application has been provided to (i) the Office of the United States Trustee for Region IX; (ii) each of Debtor's alleged secured lenders; and (iii) the additional creditors identified on Debtor's list of twenty (20) largest unsecured creditors. In light of the nature of the relief requested, Debtor submits that no other or further notice is necessary.

### NO PRIOR REQUEST

37.     No prior request for the relief sought in this Application has been made to this or any other Court.

## **CONCLUSION**

WHEREFORE, Debtor respectfully requests that the Court enter an order substantially in the form attached hereto as Exhibit B, granting the relief requested herein and granting Debtor such other and further relief as the Court deems just and proper.

                                                                           Respectfully submitted,

Dated:   October ___, 2014          */s/ John Joseph Louis Johnson, III*
                                                                      *(see attached signature)*
                                                                      John Joseph Louis Johnson, III
                                                                      Debtor and Debtor-in-Possession

Respectfully submitted,


*/s/ Marc J. Kessler*
Marc J. Kessler (0059236)
Daniel A. DeMarco (0038920)
Hahn Loeser & Parks LLP
65 E. State Street, Suite 1400
Columbus, Ohio  43215
Telephone:    (614) 233-5168
Facsimile:    (614) 221-5909
E-mail:    mkessler@hahnlaw.com
                dademarco@hahnlaw.com

*Proposed Attorneys for Debtor*
*John Joseph Louis Johnson, III*

6899513.1

Respectfully submitted,

Dated: October 1ˢᵗ, 2014

*[signature]*
John Joseph Louis Johnson, III
Debtor and Debtor-in-Possession

Respectfully submitted,

/s/ Marc J. Kessler
Marc J. Kessler (0059236)
Daniel A. DeMarco (0038920)
Hahn Loeser & Parks LLP
65 E. State Street, Suite 1400
Columbus, Ohio 43215
Telephone:   (614) 233-5168
Facsimile:   (614) 221-5909
E-mail:      mkessler@hahnlaw.com
             dademarco@hahnlaw.com

*Proposed Attorneys for Debtor
John Joseph Louis Johnson, III*

# **EXHIBIT A**

6899513.1



**TRI STAR**
SPORTS & ENTERTAINMENT GROUP
BUSINESS MANAGEMENT · TAX

October 1, 2014

John Joseph Louis "Jack" Johnson III
11 Music Circle South
Nashville, TN 37203

Re: **Representation Agreement for Business Management**

Dear Mr. Johnson,

We are pleased that you have selected Tri Star Sports and Entertainment Group, Inc. (the "Firm") to provide business management services to you, John Joseph Louis Johnson III (the "Client"). As used herein, the term "you" or "your" shall refer to John Joseph Louis Johnson III. As used herein, the term "we" or "us" shall refer to Tri Star Sports and Entertainment Group, Inc. Our goals are to provide you with business management services of the highest quality and efficiency and to help you accomplish your business objectives. Our relationship should begin with a mutual understanding of expectations and should continue with full and candid communications between us throughout the course of our representation. Accordingly, the purpose of this letter is to confirm the terms of our representation, including the basis upon which the Firm will charge you for business management services.

1. <u>Business Management Services</u>: You have asked us to provide customary business management services, including but not limited to, bookkeeping and bill paying, the creation of vendor purchase orders, performance contract servicing, periodic financial reviews, the preparation of financial statements for your personal usage, insurance analysis, investment services and tax preparation. To the extent that additional services are requested by you and agreed upon by us, the terms of this Agreement will apply to such additional services. As best efforts allow, we will also work with you to identify and source additional marketing, branding and merchandising opportunities.

2. <u>Client Responsibility</u>: For us to represent you effectively, we ask that you partner fully with us in our work by, among other things, providing us with relevant information and making yourself reasonably available for consultation. Your responsibility to us is also financial, including the timely payment of our fees.

3. <u>Fee Basis</u>: Our fees for services provided hereunder will be based on time at the then current hourly billing rate for the staff member rendering services to you. We bill in quarter-hour intervals, and our hourly rates vary based on the firm participant. Currently, our rates are as follows:

CEO, CFO hourly rates .................................................................................... $250
Manager hourly rates ........................................................................... $100 to $225
Paraprofessional hourly rates ............................................................................ $100
Clerical, administrative and data entry hourly rates ............................. $40 to $85

11 Music Circle South • Nashville • TN 37203 • t 615.309.0969 • f 615.309.0929
1800 Century Park East • Suite 1000 • Los Angeles • CA 90067 • t 323.284.7600 • f 323.284.5481



Tax preparation charges are based on the current hourly billing rate for the staff member rendering services to prepare each tax return. The number of hours incurred will be based upon the complexity of your tax return(s). The tax preparation charges will also include out-of-pocket costs, processing and handling fees.

4.   <u>Cost and Expenses</u>:  In addition to the above fee structure, we will expect payment for disbursements to third parties and other reasonable out-of-pocket charges including, but not limited to, expenses for travel, messenger service, long distance charges, and mail and courier services. You hereby authorize us to deduct such expenses from any funds we hold in trust, or agree to pay these expenses included in your monthly billing. No expense in excess of two hundred and fifty dollars ($250.00) will be deducted from any funds we hold in trust or receive on your behalf without prior written approval by you.

5.   <u>Retainer</u>: You, the Client, have provided to the Firm a retainer in the amount of $54,847.75 to be applied against business management fees and expenses incurred by the Firm on behalf of you, the Client, beginning October 1, 2014. The retainer is deposited in an interest bearing trust account. The Firm will withdraw funds to pay for services provided under this agreement. Should the retainer balance be fully depleted, our fees for services provided thereafter will be based on time at the then current hourly billing rate for the staff member rendering services to you.

6.   <u>Billing</u>:  You will be billed periodically (customarily on a monthly basis) for the out-of-pocket charges and fees referenced herein. Payment to the Firm will be made from funds we hold in trust. When no funds remain in trust, you agree to pay on a monthly basis, or hereby authorize us to deduct all monies due from any funds received by us on your behalf including, without limitation, all gross receipts.

7.   <u>Exclusivity of Services</u>: The Firm shall be the Client's sole and exclusive business manager for so long as this Agreement is in effect.

8.   <u>Termination of Services</u>:  You shall have the right at any time to terminate our services upon written notice to us. We shall, promptly after receiving such notice, take appropriate action to withdraw from our representation of you and cease rendering additional services. Should you elect to exercise such right, we will cooperate with you in facilitating an orderly and timely transfer of your files and records to you or to your new business manager. Such determination shall not, however, relieve you of the obligation to pay the fees due for services rendered and expenses incurred prior to our receipt of such termination notice.

Likewise, the Firm may terminate this Agreement upon written notice to you. Upon the giving of such notice the Firm will take appropriate action to withdraw from our representation of you and to cease rendering additional services. We will cooperate with you in facilitating an orderly and timely transfer of your files and records to you or to your new business manager. You will remain responsible for any fees due for services rendered and expenses incurred prior to our giving of such notice.

The terms set forth in this Representation Agreement are reasonable and customary in the entertainment industry and reflect the basis upon which we are undertaking your representation and our compensation for that undertaking. Within the Firm, I, Lou M. Taylor, will be primarily responsible for your account. My direct dial number at the office is (615) 309-0969, and my cell is (615) 642-8604. Should you have questions regarding

11 Music Circle South • Nashville • TN 37203 • t 615.309.0969 • f 615.309.0929
1800 Century Park East • Suite 1000 • Los Angeles • CA 90067 • t 323.284.7600 • f 323.284.5481



the content of this Agreement, or about the Firm's services or billing practices during the term of service, please do not hesitate to contact me so that all is addressed in a timely and effective manner.

If the terms of this Agreement meet with your approval, please sign and return the original. We look forward to working with you.

Very truly yours,

TRI STAR SPORTS AND ENTERTAINMENT

By: _____
        Lou M. Taylor

We each have read the above letter and agree to its terms effective as of the date on which the Firm first provided services to us.

AGREED AND ACCEPTED:

By: _____
    John Joseph Louis "Jack" Johnson III

# **EXHIBIT B**

6899513.1

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF OHIO
EASTERN DIVISION

------------------------------------------------------- x
In re:                                : Chapter 11
                                      :
John Joseph Louis Johnson, III,       : Case No. 2:14-bk-57104
                                      :
               Debtor.                : Judge John E. Hoffman, Jr.
                                      :
------------------------------------------------------- x

**ORDER APPROVING APPLICATION OF DEBTOR AND DEBTOR-IN-POSSESSION FOR ORDER AUTHORIZING DEBTOR AND DEBTOR-IN POSSESSION TO RETAIN AND EMPLOY TRI STAR SPORTS & ENTERTAINMENT AS FINANCIAL ADVISOR, *NUNC PRO TUNC* AS OF THE PETITION DATE**

Upon consideration of the application dated October 7, 2014 (the "Application"), of John Joseph Louis Johnson, III, (the "Debtor"), for entry of an order approving the Debtor's retention of Tri Star Sports & Entertainment ("Tri Star") as financial advisor for the Debtor; and based upon the statements of Debtor included in the Application; and after due deliberation and hearing, this Court finds that: (i) it has jurisdiction over the matters raised in the Application under 28 U.S.C. §§ 157 and 1334; (ii) venue of this matter is proper under 28 U.S.C. §§ 1408 and 1409; (iii) this matter is a core proceeding under 28 U.S.C. § 157(b)(2); (iv) the relief

6894922.1

requested in the Application is in the best interests of Debtor, his estate, creditors, and other parties in interest; (v) adequate and proper notice of the Application and the hearing thereon has been given and that no other or further notice is necessary; and (vi) good and sufficient cause exists for the granting of the relief requested in the Application as set forth herein.  Accordingly,

IT IS HEREBY ORDERED, ADJUDGED AND DECREED THAT:

1. The Application is GRANTED and APPROVED in its entirety.

2. In accordance with sections 327(a) and 328 of the Bankruptcy Code, and Rules 2014 and 6003(a) of the Bankruptcy Rules, the Debtor shall be and hereby is authorized and empowered to employ and have retained Tri Star as his financial advisor, *nunc pro tunc,* for the matters referred to in the Application, as of the Petition Date, October 7, 2014, during the pendency of this Chapter 11 Case.

3. The retainer of $54,847.75 held by Tri Star is approved and shall be held in trust and applied against any approved and unpaid fees and out-of-pocket expenses that may remain unpaid at the termination of the engagement of Tri Star, or upon further Order of this Court, with any unearned balance remaining at that time to be refunded to Debtor, all in accordance with the orders of the Court.

4. In connection with the services to be rendered by Tri Star, Tri Star shall receive compensation and reimbursement of expenses in accordance with the provisions of sections 327, 330 and 331 of the Bankruptcy Code and any applicable order of the Court.

5. The Court shall retain jurisdiction to hear and determine all matters relating to the enforcement or interpretation of this Order.

6. This Order is immediately effective and enforceable upon entry.

**IT IS SO ORDERED.**

# # #

Submitted by,

_____
Marc J. Kessler (0059236)
Daniel A. DeMarco (0038920)
Hahn Loeser & Parks LLP
65 E. State Street, Suite 1400
Columbus, Ohio 43215
Telephone: (614) 233-5168
Facsimile: (614) 221-5909
E-mail: mkessler@hahnlaw.com

dademarco@hahnlaw.com

*Proposed Attorneys for Debtor*
*John Joseph Louis Johnson, III*

Copies to:

3

6894922.1