## UNITED STATES BANKRUPTCY COURT
## SOUTHERN DISTRICT OF OHIO

------------------------------------------------------- x

In re:                                            :      Chapter 11
                                                  :
JOHN JOSEPH LOUIS JOHNSON, III,                   :      Case No. 14-57104
                                                  :
                        Debtor.                   :      Judge John E. Hoffman, Jr.

------------------------------------------------------- x

### FIRST AMENDED CHAPTER 11 PLAN OF REORGANIZATION
### OF JOHN JOSEPH LOUIS JOHNSON, III
### DATED AS OF JUNE 17, 2016

### ARTICLE I
### SUMMARY[1]

On October 7, 2014 (the "Petition Date"), debtor and debtor-in-possession John Joseph Louis Johnson, III ("Debtor") commenced this case by filing a voluntary petition for relief under chapter 11 of the Bankruptcy Code.  This First Amended Plan of Reorganization (as amended, supplemented, or otherwise modified, the "Plan") proposes to pay creditors of the Debtor from non-exempt assets existing as of the Effective Date, consisting primarily of cash and proceeds of assets to be sold pursuant to this Plan, and future disposable income.

This Plan provides for the treatment of classes of secured and unsecured claims.  Secured creditors holding Allowed Claims shall receive the value of their collateral, in kind or in cash payments.  Unsecured creditors holding Allowed Claims will receive cash distributions in a manner consistent with the Bankruptcy Code, unless otherwise agreed by the holders of such Allowed Claims as more fully set forth below.  This Plan also provides for (a) the payment of Administrative Claims in full upon allowance thereof pursuant to a Final Order, unless otherwise agreed by the Debtor and the holder of the subject Allowed Administrative Claim; and (b) the payment of Allowed Priority Claims in full on the Effective Date unless otherwise agreed by the Debtor and the holder of the subject Allowed Priority Claim.

All creditors should refer to Articles II through IV of this Plan for information regarding the precise treatment of their Claim(s). Your rights may be affected. You should read these papers carefully and discuss them with your attorney, if you have one. If you do not have an attorney, you may wish to consult one.

---

[1] All capitalized terms not defined in this Summary are subsequently defined herein.

8570041.1

## ARTICLE II
## DEFINITIONS AND RULES OF CONSTRUCTION

2.01 <u>Definitions and Rules of Construction</u>.  Unless otherwise stated herein, the definitions and rules of construction set forth in sections 101 and 102 of the Bankruptcy Code shall apply when terms defined or construed in the Bankruptcy Code are used in this Plan, and they are supplemented by the following definitions:

"<u>Administrative Claim</u>" means a Claim asserted or authorized to be asserted in accordance with sections 503(b) and 507(a)(2) during the period up to and including the Effective Date.

"<u>Administrative Holdback</u>" means Effective Date Cash in the amount of $1,600,000 to be held in escrow by Hahn Loeser as of the Effective Date for the payment of (a) Allowed Administrative Claims, (b) Allowed Priority Tax Claims, (c) UST Fees accrued up to, but not including, the Effective Date, (d) Allowed Convenience Claims, and (e) a distribution to the holders of Allowed General Unsecured Claims in Class 7.

"<u>Allowed</u>" shall have the meaning ascribed to it in Section 6.02 of this Plan.

"<u>Ann Arbor Real Property</u>" means the real property commonly known as 2705 Lowell Road, Ann Arbor, Michigan 48103.

"<u>Ann Arbor Real Property Alleged Lease</u>" means that certain alleged lease of the Ann Arbor Real Property between the Debtor and the Johnsons dated as of April 27, 2012.

"<u>Assumed Contracts</u>" shall have the meaning ascribed to it in Section 7.01(a) of this Plan.

"<u>Avoidance Actions</u>" means any and all claims and causes of action of the Debtor that may be asserted under Code Chapter 5 or applicable state law including, without limitation, any and all claims and causes of action to avoid and recover transfers made by the Debtor within 90 days prior to the Petition Date, including, without limitation, those transfers identified in Item 3(b) of the Debtor's Statement of Financial Affairs.

"<u>Bankruptcy Code</u>" means title 11 of the United States Code, 11 U.S.C. §§ 101-1532.

"<u>Bankruptcy Court</u>" means the United States Bankruptcy Court for the Southern District of Ohio.

"<u>Bankruptcy Rules</u>" means the Federal Rules of Bankruptcy Procedure.

"<u>Barwis Sale Proceeds</u>" means the proceeds from the disposition of Debtor's shares of Barwis Methods Training Center Of Southeast Michigan, LLC identified in that certain *Order Granting Debtor's Motion To Compromise Potential Claims With And Related To Barwis Methods Training Center Of Southeast Michigan, LLC Pursuant To Bankr. R. 9019* [Dkt. No.

2

306].

"Blum" means Rodney L. Blum.

"Capital Financial" means Capital Financial Holdings, LLC and its affiliates, including Capital Financial Partners, LLC.

"Capital Enterprises" means Capital Holdings Enterprises, LLC.

"CapStar" means CapStar Bank.

"CapStar Adequate Protection Order" means that certain *Agreed Order: (I) Granting Creditor CapStar Bank Relief From Automatic Stay as to a 2004 Hummer H2, Bearing VIN #5GRGN23U44H119248,(II) Granting Provisional Adequate Protection to CapStar as it Relates to 2012 BMW X6, Bearing VIN #5UXFG8C55CL590774 Nunc Pro Tunc to Petition Date, (III) Holding Motion for Relief as to 2012 BMW in Abeyance Pending Adjudication of Debtor's Motion for Conversion, and (IV) Authorizing and Granting Related Relief* [Dkt. No. 253].

"CapStar Adequate Protection Payments" means and collectively refers to all proceeds held in escrow by Hahn Loeser as of the Effective Date pursuant to the CapStar Adequate Protection Order.

"CapStar Adversary Proceeding" means that adversary proceeding styled *CapStar Bank v. Johnson,* A.P. No. 16-2063.

"CapStar Collateral" means that certain 2012 BMW X6, VIN # ending in -0774, owned by the Debtor and against which CapStar asserts a lien.

"CapStar Unsecured Claim" means the unsecured claim of CapStar in the amount of its Class 5A Amount.

"CapStar Withdrawals" means the withdrawals by CapStar of its objections [Dkt. 174 and 216] to the Debtor's motions [Dkt. 158 and 215] related to the Stratford Property Proceeds.

"Claim" shall have the meaning ascribed to it in Bankruptcy Code Section 101(5).

"Claim Bar Date" means February 10, 2015.

"Claim Objection Deadline" means the forty-fifth (45th) day after entry of the Confirmation Order.

"Class 5A Amount" means (a) an amount equal to thirty-five percent (35%) of the face amount of the proof of claim filed on or before the Claim Bar Date by each Settling Lender electing treatment under Class 5A rather than Class 5B of the Plan (the "Fixed Payment"), plus (b) an amount equal to ten percent (10%) of the Debtor's annual Net Future Earnings (the "Future

3

Payment") during the period commencing with the date of expiration or termination of the Debtor's Player Contract and continuing through the fifth (5th) anniversary of the entry of the Confirmation Order (the "Future Period"), which Future Payment shall be subject to the conditions set forth herein.  In the event the Debtor's Future Earnings during the Future Period exceed in the aggregate $4,500,000 (the "Minimum Amount"), then the Future Payment hereunder shall be due and payable as set forth herein.  If the Debtor's Future Earnings for the Future Period are known or can be readily determined at the commencement of the Future Period and equal or exceed the Minimum Amount, then the Future Payment shall be paid in five (5) equal installments in each of the months of November, December, January, February and March for each such season during the Future Period by the Debtor into the Class 5A Escrow.  In the event the Debtor's Future Earnings are not known or cannot be readily determined at the commencement of the Future Period, then at the end of each 12 month period during the Future Period in which the Debtor's Future Earnings equaled or exceeded $1,500,000 for such 12 month period, then the Debtor shall deposit the Future Payment into the Class 5A Escrow, but such funds (the "Contingent Future Payment") shall not be disbursed to the Class 5A Settling Lenders until the expiration of the Future Period, provided however, that if at the end of the Future Period, the Debtor's actual Future Earnings did not equal or exceed $4,500,000 in the aggregate for the Future Period, then the Contingent Future Payment shall be returned to the Debtor, and provided further that if at the end of the Future Period the Debtor's actual Future Earnings equaled or exceeded $4,500,000 in the aggregate for the Future Period, then the Contingent Future Payment shall be paid to the Class 5A Settling Lenders and the Debtor shall make a further payment at such time to the Class 5A Escrow for the benefit of the Settling Lenders in an amount equal to 10% times the aggregate Net Future Earnings during the Future Period less the Contingent Future Payment.  The Debtor's payment of the Future Payment shall be in consideration for the waiver and release by any Settling Lender of his, her or its rights under Section 1127(e) of the Bankruptcy Code, except the right to seek a modification of the Plan that would enable the Settling Lender to receive their Class 5A Share, or to oppose a modification of the Plan by any other person to the extent such modification could reduce or impair payment of the such Settling Lender's Class 5A Share.  Notwithstanding anything herein to the contrary, in no event shall any other obligations of the Debtor under this Plan impair, decrease or diminish the amounts to be paid, or the timing of payment, to the Settling Lenders hereunder, including the Fixed Payment and the Future Payment.  If Debtor is not in default under the Plan at the end of the second anniversary of the Effective Date, and the Fixed Payment has not been fully paid as of such date, then the Debtor shall continue to make payments to the Class 5A Escrow until the Fixed Payment is paid in full, which payments shall come from the Net Future Earnings Share (in addition to the Future Payment) and shall be paid on the dates required for the payments due from the Net Player Contract Earnings Share below and in amounts equal to such payments multiplied by a fraction, the numerator of which is Net Future Earnings and the denominator of which is the Net Player Contract Earnings, but in no event shall such fraction be greater than 100%.  In all events the Fixed Payment amount for the Initial Settling Lenders shall be $2,817,568.61.

"Class 5A Escrow" means an escrow account to be held by Hahn Loeser solely for the benefit of Settling Lenders and the payment of their corresponding Class 5A Shares, which escrow shall be funded by the Debtor on the Effective Date and throughout the term of the Plan as provided herein.  Hahn Loeser shall make payments from such Class 5A Escrow to the Settling

8570041.1

Lenders of the amounts due such Settling Lenders pursuant to the terms hereof, which payments shall be made within ten (10) business days after receipt by Hahn Loeser of monies from the Debtor as required herein. The Debtor shall be responsible for the payment of any fees or costs of Hahn Loeser to administer the Class 5A Escrow. Other than receiving their Class 5A Share distributed as part of the Class 5A Escrow, Settling Lenders will not otherwise participate in administration of the Creditor Trust, including decision making with respect to a trustee, trustee compensation, and pursuance of causes of action assigned to the Creditor Trust, and will have no obligation to fund any costs and expenses of administering such Creditor Trust and no portion of the Class 5A Share shall be used to fund the Creditor Trust in any way.  Non-settling Lenders will be responsible for and pay for all costs associated with the administration of the Creditor Trust.

"Class 5A Share" means (a) the Fixed Payment to be received by each Settling Lender, provided that the Initial Settling Lenders have agreed among themselves to allocate the aggregate Fixed Payment to the Initial Settling Lenders pursuant to and in accordance with Exhibit 5A attached hereto, which may be amended or supplemented prior to 14 days before the Confirmation hearing and (b) each Settling Lender's pro rata share of the Future Payment (with the Initial Settling Lenders agreeing to allocate the aggregate Future Payment to the Initial Settling Lenders in proportion to the amounts set forth on Exhibit 5A attached hereto).  Each Settling Lender other than the Initial Settling Lenders electing to join Class 5A shall receive a Class 5A Share equal to 35% of the unsecured portion of the face amount of their respective proof of claim as filed on or before the Claim Bar Date, plus a share of the Future Payment paid pro rata based upon the Class 5A Amounts, and the Debtor shall contribute the equivalent amount of cash to the Class 5A Escrow to pay such additional Settling Lender its Fixed Payment on the respective dates set forth herein.

"Class 5B Amount" means the aggregate of all Allowed Claims of Non-settling Lender Claims as is defined in Section 3.05B unless otherwise specified in this Plan.

"Cobalt" means Cobalt Sports Capital, LLC.

"Collateral" has the meaning ascribed to it in Section 9-102(12) of the Uniform Commercial Code.

"Confirmation Hearing" means the date set by an order of the Bankruptcy Court for a hearing on the confirmation of the Plan.

"Confirmation Order" means an order of the Bankruptcy Court confirming this Plan.

"Creditor Trust" means the trust created pursuant to the Creditor Trust Agreement.

"Creditor Trust Agreement" means the trust agreement, which will be filed as part of the Plan Supplement, under which the Creditor Trust is created.

"Creditor Trust Assets" means and collectively refers to (a) the pro rata share with the Class 5A Escrow of the Plan Cash as determined in Section 8.03 below; (b) pro rata share with the Class

5

5A Escrow of the Net Non-Exempt Asset Sale Proceeds or Non-Exempt Assets; (c) the Litigation Claims, including the Litigation Claim Proceeds; and (d) pro rata share with the Class 5A Escrow of the Effective Date Holdback or any Creditor Trust Rebates, as and to the extent provided in Section 8.07 of this Plan.

"Creditor Rebates" has the meaning ascribed to it in Section 8.07(c) of this Plan.

"Creditor Trustee" the trustee under the Creditor Trust Agreement, and any successor trustee(s) of the Creditor Trust.

"Debtor Disputed Secured Claim Rebate" has the meaning ascribed to it in Section 8.07(b) of this Plan.

"Debtor Disputed Secured Claim Reserve Rebate" has the meaning ascribed to it in Section 8.07(c) of this Plan.

"Debtor Rebates" has the meaning ascribed to it in Section 8.07(c) of this Plan.

"Deficiency Claim" means the amount of the difference, if any, between a Claim and that portion of such Claim that is a Secured Claim.

"Disputed" shall have the meaning ascribed to it in Section 6.01 of this Plan.

"Disputed Secured Claim Rebate" has the meaning ascribed to it in Section 8.07(b) of this Plan.

"Disputed Secured Claim Reserve" means the amount, if any, of the Effective Date Holdback determined by the Bankruptcy Court to be adequate to protect the interest of EOT or RFF in with respect to any alleged Secured Claim either EOT or RFF asserts, and which Debtor disputes.

"Disputed Secured Claim Reserve Motion" has the meaning ascribed to it in Section 8.07(a) of this Plan.

"Disputed Secured Claim Reserve Motion Deadline" has the meaning ascribed to it in Section 8.07(a) of this Plan.

"Disputed Secured Claim Reserve Rebate" has the meaning ascribed to it in Section 8.07(c) of this Plan.

"Effective Date Cash" means the cash in Debtor's debtor-in-possession accounts as of the Effective Date.

"Effective Date Holdback" means Effective Date Cash in the amount of $1,000,000 to be held in escrow by Hahn Loeser as of the Effective Date for (a) the payment of post-Effective

6

8570041.1

Date professional fees and expenses for the implementation of the Plan, (b) the payment of UST Fees accruing on and after the Effective Date, and (c) except as provided in Section 8.07 of this Plan, the funding of all or any part of any Disputed Secured Claim Reserve.

"Effective Date Payment" means an amount equal to the Effective Date Cash minus the Administrative Holdback, Effective Date Holdback, and Off-season Holdback.

"EOT" means EOT Advisors, LLC.

"Exempt Assets" means the Debtor's exempt assets set forth in Schedule C of the Debtor's Schedules of Assets and Liabilities.

"Ferrari" means that certain 2011 Ferrari California, VIN ending -0185, owned by the Debtor and against which RFF asserts a lien.

"Future Earnings" means the annual gross amount earned or to be earned by Debtor from any source during any period from and after expiration or termination of the Player Contract, but not beyond, the fifth (5th) anniversary of the entry of the Confirmation Order including, without limitation, pursuant to any Future Player Contract.

"Future Player Contract" means any [NHL] Player's Contract Debtor may enter into at any future time for any season through and including, but not beyond, the 2020-21 NHL season, if any.

"Final Order" means a final, non-appealable order of the Bankruptcy Court.

"Hahn Loeser" means Hahn Loeser & Parks LLP, counsel for the Debtor and Debtor in Possession in this Bankruptcy Case.

"Initial Settling Lenders" means Blum, Capital Enterprises, Capital Financial and CapStar.

"Initial Settling Lenders Share of Class 5A Amount" means 35% of the aggregate proof of claim amounts of the Initial Settling Lenders as of the Claim Bar Date, which is equivalent to $2,817,568.61. For avoidance of doubt, the Initial Settling Lenders shall allocate such amount by agreement by and among them as set forth on Exhibit 5A attached hereto, which may be amended or supplemented prior to 14 days before the hearing on Confirmation.

"J. Johnson II" means the Debtor's father, John Joseph Louis Johnson II.

"Johnsons" means and collectively refers to K. Johnson and J. Johnson II only.

"K. Johnson" means the Debtor's mother, Kristina A. Johnson, sometimes a/k/a Tina Johnson.

"Lender" means any of Blum, Capital Enterprises, Capital Financial, CapStar, Cobalt,

7

EOT, Pro Player, and RFF.

"Local Rules" means the Local Rules of Procedure for the Bankruptcy Court.

"Litigation Claims" means and collectively refers to any and all rights, claims, causes of action, and remedies of the Debtor against any person or entity existing as of the Petition Date, but specifically excluding Retained Litigation Claims.

"Litigation Claim Proceeds" means any and all proceeds or other assets received in respect of any judgment on, or settlement of, any Litigation Claim.

"Living Expenses" means $16,230 per month through September 2016; and $20,000 per month beginning in October 2016, plus an increase of 5% beginning on October 1, 2017, and continuing on each October 1 thereafter.

"Malaga Way Property Proceeds" means the proceeds from the sale of real property commonly known as 48 Malaga Way, Manhattan Beach, California 90266.

"Net Non-Exempt Asset Sale Proceeds" shall have the meaning ascribed to it in Section 8.02(a) of the Plan.

"Net Future Earnings" means Future Earnings net of all applicable federal, state and local taxes, required dues, required escrows, and other mandatory withholdings.

"Net Future Earnings Share" means Net Future Earnings minus Living Expenses.

"Net Player Contract Earnings" means the annual amount of cash from earnings under the Player Contract following the Effective Date, other than NHL Escrow Rebates, available after (a) Living Expenses, and (b) applicable federal, state and local taxes, required dues, required escrow and other mandatory withholdings payable under the Player Contract.

"Net Player Contract Earnings Share" means an aggregate amount equal to $3,200,000 to be paid from Net Player Contract Earnings following the Effective Date through the end of the 2016-17 NHL and 2017-18 NHL seasons only, which amount shall be payable in installments of $300,000 for each of the months of November, December, January and February and $400,000 in March for each such season, provided however, that in the event the Fixed Payment to the Settling Lenders has not been paid prior to the end of the 2017-18 NHL season and the Debtor is not then in default under the Plan, then the Debtor shall make payments from the Net Future Earnings Share into the Class 5A Escrow for the benefit of the Settling Lenders as described above in the definition of Class 5A Amount..

"NHL" means the National Hockey League.

"NHL Escrow" means amounts withheld and paid to the NHL from Debtor's gross compensation under his Player Contract or any Future Player Contract for any season through and

8

including, but not beyond, the 2020-21 NHL season.

"NHL Escrow Rebate" means the amount of cash, if any, rebated from the NHL to Debtor from the NHL Escrow and received by Debtor during any season through and including, but not beyond, the 2020-21 NHL season.

"NHL Escrow Rebate Share" means 50% of any amount of any NHL Escrow Rebate in excess of $10,000.

"Non-Exempt Asset Contribution Deadline" means sixty (60) days after the Effective Date.

"Non-Exempt Assets" means the following assets of the Debtor with the corresponding projected value as of the Effective Date (unless otherwise noted), together with any other or further assets of the Debtor that are determined to be property of the Debtor's estate prior to the Effective Date:

| Asset Description[2] | Projected Market Value as of Effective Date (Unless Otherwise Noted) |
|---|---|
| Effective Date Cash less the Administrative Holdback, the Effective Date Holdback and the Off-season Holdback | $822,768.99 |
| Security Deposit for Rental Property held by Jeff Canady | $2,000.00 |
| Way-In, Inc. Stock | $0.00 |
| 2007 BMW X5[3], VIN: Ending -6763 | $17,000.00 |
| 2007 BMW X5[4], VIN: Ending -4757[5] | $13,325.00 |

---

[2] Nothing contained in this Plan is or shall be deemed to be an admission by Debtor that, in the event of conversion to chapter 7, post-petition earnings are property of the estate.

[3] K. Johnson's name appears on the certificate of title to this vehicle for convenience only. Debtor holds equitable title.

[4] K. Johnson's name appears on the certificate of title to this vehicle for convenience only. Debtor holds equitable title.

[5] The valuation of the automobile takes into account exemption allowance of $3,675 as of the Petition Date. R.C. § 2329(a)(2); March 14, 2016, Ohio Judicial Conference exemption calculations.

9

| | |
|---|---|
| 2011 Ferrari California, VIN: Ending -0185 | $125,000.00 |
| CapStar Collateral (2012 BMW X6) | $35,000.00 |
| CapStar Adequate Protection Payments | $10,424.44 |
| Stratford Real Property Proceeds | $400,000.00 |
| Barwis Sale Proceeds | $74,125.00 |
| **Total Non-Exempt Assets** | **$ 1,499,643.43** |

"Non-settling Lender Claim" has the meaning ascribed to it in Section 3.05B of this Plan.

"Notice of Plan Support" means a document in the form of Exhibit 5 to this Plan.

"Objecting Creditors" means and collectively refers to Blum, Capital Financial, Capital Enterprises, CapStar, Cobalt, EOT, Pro Player, and RFF.

"Off-season Holdback" means Effective Date Cash in the amount of $136,332 for Debtor's Living Expenses through October 31, 2016.

"Plan Cash" means cash consisting of the Effective Date Payment, Net Player Contract Earnings Share, Net Future Earnings Share, and NHL Escrow Rebate Share.

"Plan Supplement" means a supplement to be filed with the Bankruptcy Court by the Debtor on or before the 10th business day before votes in respect of the Plan are due, containing the Creditor Trust Agreement.

"Player Contract" means that certain Standard [NHL] Player's Contract dated January 8, 2011, by and between Debtor and COL HOC Ltd. Partnership.

"Pro Player" means Pro Player Funding, LLC.

"Rejection Damage Claim" shall have the meaning ascribed to it in Section 7.01(c) of this Plan.

"Rejection Damage Claim Bar Date" shall have the meaning ascribed to it in Section 7.01(c) of this Plan.

"Retained Litigation Claims" means and collectively refers to (a) Avoidance Actions against any or all of the Objecting Creditors; and (b) any and all other or further rights, claims, causes of action, and remedies of the Debtor against or related to any or all of the Objecting Creditors or their respective claims, provided however, that Retained Litigation Claims shall not

10

include any claims or causes of action against the Settling Lenders to the extent released in accordance with the Plan.

"RFF" means RFF Family Partnership, LP.

"Schedules of Assets and Liabilities" means the Debtor's *Schedules of Assets and Liabilities* [Dkt. No. 37], as amended including, without limitation, at Docket Nos. 44, 251, and 467, and as the same may be further amended, supplemented, or otherwise modified as permitted under the Bankruptcy Code, Bankruptcy Rules, or Local Rules.

"Scheduled Claim Amount" means the amount of a creditor's claim scheduled in the Schedules of Assets and Liabilities, provided such amount is not scheduled as "contingent," "unliquidated," or "disputed."

"Secured Claim" means that portion of a Claim that is secured by Collateral.

"Settling Lender" means the holder of a Settling Lender Claim.

"Settling Lender Claim" has the meaning ascribed to it in Section 3.05A of this Plan.

"Statement of Financial Affairs" means the Debtor's Statement of Financial Affairs [Dkt. No. 38], as amended including, without limitation, at Docket No. 252, and as the same may be further amended, supplemented, or otherwise modified as permitted under the Bankruptcy Code, Bankruptcy Rules, or Local Rules.

"Stratford Property Proceeds" means proceeds in the projected amount of $400,000 from the sale of real property commonly known as 8 Stratford Court, Manhattan Beach, California 90255, which proceeds are in escrow with Fidelity Title in California.

"TCF Bank" means TCF National Bank.

"UST" means the United States Trustee.

## ARTICLE III
## CLASSIFICATION OF CLAIMS

| 3.01 | Class 1 | CapStar Secured Claim. Class 1 consists of the Secured Claim of CapStar (the "CapStar Secured Claim") |
| --- | --- | --- |
| 3.02 | Class 2 | EOT Secured Claim. Class 2 consists of the alleged Secured Claim of EOT (the "EOT Secured Claim"). |

11

| 3.03 | Class 3 | RFF Secured Claim. Class 3 consists of the alleged Secured Claim of RFF (the "RFF Secured Claim"). |
|---|---|---|
| 3.04 | Class 4 | TCF Bank Secured Claim. Class 4 consists of the Secured Claim of TCF Bank (the "TCF Secured Claim"). |
| 3.05A | Class 5A | Settling Lender Claims. Class 5A consists of (a) the alleged Claims of any of Blum, Capital Enterprises, Capital Financial, Cobalt, Pro Player, (b) the CapStar Unsecured Claim, and (c) the Deficiency Claims, if any, of EOT and RFF, to the extent any such Lender accepts treatment under Class 5A by filing a ballot accepting the Plan as a Class 5A Settling Lender by the deadline therefor and by filing a Notice of Plan Support no later than 14 days prior to the Confirmation Hearing (collectively, the "Settling Lender Claims"). Each of the Initial Settling Lenders is and shall be deemed to be a Settling Lender. |
| 3.05B | Class 5B | Non-settling Lender Claims. Class 5B consists of (a) the alleged Claims of any of Blum, Capital Enterprises, Capital Financial, Cobalt Pro Player; and (b) the Deficiency Claims, if any, of CapStar, EOT and RFF, to the extent any such Lender does not accept treatment under Class 5A (collectively, the "Non-settling Lender Claims"). |
| 3.06 | Class 6 | Convenience Claims. Class 6 consists of all scheduled or timely filed Claims in the face amount of $1,000.00 or less (collectively, "Convenience Claims"). |
| 3.07 | Class 7 | General Unsecured Claims. Class 7 consists of (a) all general unsecured Claims, including Rejection Damage Claims but *excluding* Convenience Claims and Lender Claims (collectively, "General Unsecured Claims"). |

12

## ARTICLE IV
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS,
## U.S. TRUSTEES FEES AND PRIORITY TAX CLAIMS

4.01 <u>Unclassified Claims.</u> Pursuant to section 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims are not in classes.

4.02 <u>Administrative Claims.</u> Each holder of an Administrative Claim shall be paid in full, in cash from the Administrative Holdback (a) on or before the earlier of (i) three (3) business days after the Effective Date, if such Administrative Claim is Allowed as of the Effective Date; and (ii) three (3) business days after such Administrative Claim becomes Allowed; or (b) on such terms and conditions as otherwise agreed by Debtor and the holder of such Allowed Administrative Claim.

4.03 <u>Priority Tax Claims.</u>  Any Allowed Claim of a governmental unit against the Debtor entitled to priority of payment pursuant to sections 502(1) and 507(a)(8) of the Bankruptcy Code (collectively, "<u>Priority Tax Claims</u>") will be paid in full (a) from the Administrative Holdback on or before the later of (i) five (5) business days after the Effective Date; (ii) five (5) business days after the Claim Objection Deadline; and (iii) the entry of any final order Allowing the subject Priority Tax Claim; (b) in accordance with section 1129(a)(9)(C) of the Bankruptcy Code, by way of equal semi-annual cash payments from the Debtor in an aggregate amount equal to such Allowed Priority Tax Claim, together with interest at a fixed annual rate of 3.0% *per annum*, over a period ending not longer than five (5) years from the Effective Date; or (c) pursuant to terms, and subject to conditions, mutually agreeable to the holder of such Allowed Priority Tax Claim and the Debtor.

4.04 <u>United States Trustee Fees.</u> All fees required to be paid by 28 U.S.C. § 1930(a)(6) (collectively, "<u>UST Fees</u>") will accrue and be timely paid until the case is closed, dismissed, or converted to another chapter of the Bankruptcy Code. Any UST Fees owed on the Effective Date will be paid in full within five (5) business days after the Effective Date from the Administrative Holdback, unless otherwise agreed by the Office of the United States Trustee for Region 9 and the Debtor.  Any UST Fees accruing after the Effective Date shall be paid by the Creditor Trust.

## ARTICLE V
## TREATMENT OF CLAIMS AND INTERESTS UNDER THE PLAN

5.01 Allowed Claims shall be treated as follows under this Plan:

8570041.1

| Class | Impairment | Treatment |
|---|---|---|
| Class 1 – CapStar Secured Claim | Impaired | The CapStar Secured Claim is Allowed as a Secured Claim, secured by the CapStar Collateral and, subject to CapStar filing the CapStar Withdrawals, CapStar will receive (a) the CapStar Adequate Protection Payments on the Effective Date; and (b) Plan Cash from the Effective Date Payment in an amount equal to $35,000, without prejudice to any Deficiency Claim of CapStar. |
| Class 2 – EOT Secured Claim | Impaired | To the extent that the EOT Secured Claim is Allowed as a Secured Claim (including without limitation pursuant to that certain adversary proceeding for a declaratory judgment styled *Johnson v. EOT Advisors, LLC*, A.P. No. 16-2099), and subject to the priority of any competing Allowed Secured Claim, EOT will receive its Collateral, if any, including any Non-Exempt Assets in which EOT has an Allowed Secured Claim, or the net proceeds thereof, without prejudice to any Deficiency Claim of EOT. |
| Class 3 – RFF Secured Claim | Impaired | To the extent that the RFF Secured Claim is Allowed as a Secured Claim (including without limitation pursuant to that certain adversary proceeding for a declaratory judgment styled *Johnson v. RFF Family Partnership, LP*, A.P. No. 16-2088), and subject to the priority of any competing Allowed Secured Claim, RFF will receive its Collateral, if any, including any Non-Exempt Assets in which RFF has an Allowed Secured Claim, or the net proceeds thereof, without prejudice to any Deficiency Claim of RFF. |
| Class 4 – TCF Secured Claim | Impaired | The TCF Secured Claim shall be Allowed as a Secured Claim, and subject to the priority of any competing Secured Claim, to the extent not already received by TCF as of the Effective Date, TCF shall receive the Ann Arbor Real Property in full and final satisfaction of the TCF Secured Claim and any Deficiency Claim. |

8570041.1

| Class | Impairment | Treatment |
|-------|-----------|-----------|
| Class 5A – Settling Lender Claims | Impaired | To the extent that a Lender accepts treatment under this Class 5A by filing a ballot accepting the Plan as a Class 5A Settling Lender by the deadline therefor and by filing a Notice of Plan Support no later than 14 days prior to the Confirmation Hearing, such holder shall have an Allowed Claim solely for voting on, confirmation of and distributions under the Plan (and for no other purposes) in the amount of its filed proof of claim pursuant to the settlement with the Debtor under Bankruptcy Rule 9019 as set forth in Section 6.06 of this Plan, and shall receive an amount equal to his, her or its Class 5A Share from the Class 5A Escrow as provided herein. |
| Class 5B – Non-settling Lender Claims | Impaired | To the extent that a Non-settling Lender Claim is Allowed, the holder of such Allowed Non-settling Lender Claim shall receive an amount equal to his, her or its pro rata share of Creditor Trust Assets, except for any Non-Exempt Asset that is determined to be Collateral for an Allowed Secured Claim. |
| Class 6 – Convenience Claims | Impaired | All Convenience Claims shall be deemed Allowed as of the Effective Date and each will receive a cash distribution in the amount of the lesser of (a) the greater of his, her or its (i) Scheduled Claim Amount or (ii) Proof of Claim Amount, or (b) $500, in full and final satisfaction of such Convenience Claims. Distributions shall be made from the Administrative Holdback as soon as reasonably practicable after the Effective Date but, in any event, no more than ten (10) business days after the Effective Date.  No further distributions of any kind shall be made on account of Convenience Claims |
| Class 7 – General Unsecured Claims | Impaired | To the extent that General Unsecured Claims are Allowed, on the later of (i) fifteen (15) days after the Effective Date or (ii) fifteen (15) days after the entry of a Final Order pursuant to which such Claim becomes an Allowed Claim, each holder of a General Unsecured Claim will receive a cash distribution equal to 35% of the amount of his, her or its Allowed Claim from the Administrative Holdback. |

15

## ARTICLE VI
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

6.01    Disputed Claim. A Claim is "Disputed" if it is (a) a Claim or an Administrative Claim, which is disputed under the Plan or as to which a timely objection, by way of an adversary proceeding or otherwise, has been filed pursuant to section 502(d) or 510 of the Bankruptcy Code, or otherwise, and/or a request for estimation in accordance with section 502(c) of the Bankruptcy Code and Bankruptcy Rule 3018 has been interposed, and which objection and/or request for estimation has not been withdrawn or determined by a final, non-appealable order of the Bankruptcy Court; or (b) a Claim, proof of which was required to be filed by order of the Bankruptcy Court but as to which a proof of claim was not timely or properly filed. A Claim that is Disputed by the Debtor as to its amount only shall be deemed Allowed in the amount that the Debtor admits is owed, if any, and Disputed as to the excess. Only the Debtor may object to any Claim. A Lender's election to be treated as a Settling Lender in accordance with Class 5A hereunder shall be deemed to resolve any Disputed Claim of such Lender and such Settling Lender shall be deemed to have an Allowed Claim fixed at the amount of its proof of claim filed in this bankruptcy case solely for purposes of voting on, confirmation of and distributions under the Plan (and for no other purposes), which Allowed Claim shall be treated in accordance with Class 5A.

6.02    Allowed Claim. A Claim is "Allowed" if it is (a) a Claim that has been listed by the Debtor in his Schedules of Assets and Liabilities, as such Schedules of Assets and Liabilities may be amended by the Debtor from time to time in accordance with Bankruptcy Rule 1009, as liquidated in amount and not disputed or contingent and for which no contrary proof of claim has been filed or objection thereto interposed; (b) a Claim that is not Disputed; (c) a Claim that is compromised, settled, or otherwise resolved pursuant to the authority granted to the Debtor pursuant to a Final Order; or (d) a Claim that has been expressly allowed in this Plan, including specifically the Claims of Lenders who elect treatment under Class 5A herein as to whom such Claims are allowed solely for voting on, confirmation of and distributions under the Plan (and for no other purposes); provided, however, that Claims estimated solely for the purpose of voting to accept or reject this Plan pursuant to an order of the Bankruptcy Court shall not be considered "Allowed" hereunder.

6.03    Deadline to Dispute Claims. Only the Debtor may dispute or object to the Allowance of any Claim. Any such objection must be made by filing a written objection with the Bankruptcy Court on or before the Claim Objection Deadline.

6.04    Delay of Distribution on a Disputed Claim. No distribution will be made on account of a Disputed Claim unless and until it becomes an Allowed Claim.

6.05    Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise Disputed Claims with Bankruptcy Court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure.

8570041.1

6.06    Allowance of Settling Lender Claims.  Pursuant to Sections 1141 and 105, and Bankruptcy Rule 9019, the Debtor and the Settling Lenders have settled and compromised any and all Claims and causes of action by and between them as of the Effective Date of the Plan as follows: (i) the Debtor has agreed to the allowance of each such Settling Lender's Claim in full as set forth in such Settling Lender's proof of Claim filed in this bankruptcy case on or before the Claims Bar Date solely for purposes of voting on, confirmation of and distributions under the Plan (and for no other purposes), (ii) each such Settling Lender has agreed to elect treatment under and be bound by the terms of Class 5A of this Plan, (iii) each such Settling Lender has agreed to support confirmation of this Plan, including by voting to accept the Plan, (iv) any and all adversary proceedings and objections to Claims, including Retained Litigation Claims, by and between the Debtor and any Settling Lender shall be dismissed without prejudice as of the Effective Date, and (v) as of the date the Debtor receives a discharge under the Plan (unless prior to such date a Settling Lender has asserted in a filing with the Bankruptcy Court, and has obtained a finding from the Bankruptcy Court, that Debtor has not complied with his obligations under the Plan), then at such time the Debtor and the Debtor's bankruptcy estate and the Settling Lenders shall be deemed to have released each other from and against any and all claims and causes of action, including Retained Litigation, that exist as of the date of such discharge; provided however, that such release shall not release the obligations of the Debtor and the Settling Lenders as set forth in this Plan. In addition, no later than the Confirmation Hearing and as part of the settlement and compromise contained herein, CapStar shall withdraw its objections [Dkt. 174 and 216] to the Debtor's motions [Dkt. 158 and 215] related to the disbursement of the Stratford Property Proceeds.  Notwithstanding any other provision of the Plan to the contrary, the CapStar Adversary Proceeding shall be dismissed by Debtor with prejudice on the Effective Date, the Class 1 Secured Claim of CapStar shall be Allowed for all purposes, the Class 5A CapStar Unsecured Claim shall be Allowed in the amount of its Class 5A Amount for all purposes, and other than such Allowed Claims to be paid pursuant to the Plan all claims by and between Debtor, Debtor's estate and CapStar shall be waived and released as of the Effective Date.  From and after the Effective Date the rights of CapStar against the Debtor and Debtor's estate shall be based solely upon its Class 1 Secured Claim and its Class 5A CapStar Unsecured Claim for all purposes. The Plan shall constitute a motion for approval of the above settlements and compromises under Bankruptcy Rule 9019.

## ARTICLE VII
## PROVISIONS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES

7.01 Assumed Executory Contracts and Unexpired Leases.

(a)    Pursuant to section 365(b) of the Bankruptcy Code, the Debtor assumes the following pre-petition executory contracts and/or unexpired leases (collectively, the "Assumed Contracts") effective upon the Effective Date, and proposes to pay the following cure costs in full within five (5) business days after the Effective Date in connection with such

17

assumption:

| Counterparty | Lease or Executory Contract Description | Cure Cost |
|---|---|---|
| COL HOC Ltd. Partnership | Player Contract | $0.00 |
| HCC Specialty Underwriters, Inc. | Individual Professional Athletes Insurance Contract #: HCCSU / 113141 | $0.00 |
| Tri-Star Sports & Entertainment Group | Management Agreement | $0.00 |
| Verizon Wireless | Cell Phone Contract | $0.00 |

(b)     Entry of the Confirmation Order shall be a conclusive finding as to the satisfaction of the requirements to assume the Assumed Contract(s) and Lease(s) under Bankruptcy Code Section 365(b).

(c)     Upon entry of the Confirmation Order, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases not expressly assumed under Section 7.01(a) above or assumed before entry of the Confirmation Order including, without limitation, all executory contracts and unexpired leases set forth in Schedule G of the Schedules of Assets and Liabilities and that certain Ann Arbor Real Property Alleged Lease. A proof of a Claim arising from the rejection of an executory contract or unexpired lease under this section (a "Rejection Damage Claim") must be filed with the Bankruptcy Court no later than the fifteenth (15th) business day after entry of the Confirmation Order (the "Rejection Damage Claim Bar Date").  **Any and all Rejection Damage Claims not filed on or before the Rejection Damage Claim Bar Date shall be automatically disallowed and forever barred in their entirety.**

### ARTICLE VIII
### MEANS FOR IMPLEMENTATION OF THE PLAN

The Plan shall be implemented in the following manner:

8.01    Creation of Creditor Trust. The Creditor Trust will be created on the Effective Date pursuant to the Creditor Trust Agreement.  The Creditor Trust shall only have the right to receive sums for Class 5B Lenders; remit Class 5B distributions; prosecute, settle or otherwise liquidate the Litigation Claims; and distribute the Litigation Claim Proceeds; and the Creditor Trust Agreement shall so provide.  Settling Lenders will not participate in administration of the Creditor Trust, including decision making with respect to a trustee, trustee compensation, and

18

pursuance of causes of action assigned to the Creditor Trust, and will have no obligation to fund any costs and expenses of administering such Creditor Trust and no portion of the Class 5A Share shall be used to fund the Creditor Trust in any way.  Non-settling Lenders will be responsible for and pay for all costs associated with the administration of the Creditor Trust.  The Creditor Trust shall not have the right to seek a modification of the Plan under Section 1127 of the Bankruptcy Code or otherwise.  The Creditor Trust is granted only these specific rights and does not otherwise succeed to any rights of the Debtor, the Debtor in Possession, the UST, the Debtor's estate or any rights derivative of the UST, the Debtor or the estate.

8.02    Liquidation of Non-Exempt Assets.    On or before the Non-Exempt Asset Contribution Deadline, Debtor shall contribute all Non-Exempt Assets (that are not already reduced to cash as of the Effective Date) to the Creditor Trust and the Class 5A Escrow on a pro rata basis based on the Allowed Claims of the Class 5A Settling Lenders and the Class 5B Non-settling Lenders as set forth in section 8.03 below using any or all of the following mechanisms in Debtor's sole and absolute discretion:

(a) liquidate and reduce to cash proceeds Non-Exempt Assets that are not already cash proceeds as of the Effective Date and contribute the net proceeds of such Non-Exempt Assets (such proceeds, the "Net Non-Exempt Asset Sale Proceeds") on a pro rata basis to the Creditor Trust and the Class 5A Escrow;

(b) contribute on a pro rata basis to the Creditor Trust and the Class 5A Escrow Exempt Assets consisting of cash or cash equivalents in lieu of liquidating a particular Non-Exempt Asset to the Creditor Trust; provided, however, that the amount of such contribution shall be not less than the value ascribed to such Non-Exempt Asset in the definition of Non-Exempt Assets set forth in Section 2.01 of this Plan; or

(c) take all means necessary in order to transfer and convey the full extent of Debtor's right, title, and interest in and to any particular Non-Exempt Asset on a pro rata basis to the Class 5A Escrow and to the Creditor Trustee on behalf of the Creditor Trust.

The Creditor Trustee may, upon request of the Debtor, extend the Non-Exempt Asset Contribution Deadline in the Creditor Trustee's sole and absolute discretion.

8.03    Funding of the Creditor Trust and the Class 5A Escrow.    Plan Cash and the proceeds from the liquidation of the Non-Exempt Assets pursuant to Section 8.02 above (the "Distributable Cash") shall be deposited into the Class 5A Escrow and the Creditor Trust on a pro rata basis with (i) the Class 5A Escrow portion being equal to the applicable amount of Distributable Cash to be deposited multiplied by a fraction, the numerator of which is the total of the Settling Lenders' Allowed Claims in Class 5A and the denominator of which shall be the total amount of (a) the claims of the Class 5A Settling Lenders, each in the amount of its filed proof of claim as of the Claims Bar Date, and (b) the claims of the Class 5B Non-settling Lenders, each in the amount of its filed proof of claim as of the Claims Bar Date unless its Allowed Claim is

19

less in which case it shall be the amount of the Allowed Claim of such Class 5B Non-settling Lenders, and (ii) the Creditor Trust portion being the remainder of such applicable amount of Distributable Cash. Distributable Cash shall be paid by the Debtor as follows: (a) the Effective Date Payment shall be deposited into the Class 5A Escrow and the Creditor Trust in accordance herewith within three (3) business days after the Effective Date; (b) the Net Player Contract Earnings Share payments shall be deposited into the Class 5A Escrow and the Creditor Trust in accordance herewith within three (3) business days after Debtor's actual receipt of the same; (c) the Net Future Earnings Share payments, if any, shall be deposited into the Class 5A Escrow and the Creditor Trust in accordance herewith within three (3) business days after Debtor's actual receipt of the same; (d) NHL Escrow Rebate Share payments, if any, shall be deposited into the Class 5A Escrow and the Creditor Trust in accordance herewith within three (3) business days after Debtor's actual receipt of the same; (e) any Creditor Trust Rebates shall be deposited into the Class 5A Escrow and the Creditor Trust when and as provided in Section 8.07 of this Plan, (f) for proceeds from the liquidation of the Non-Exempt Assets, within three (3) business days after such liquidation, and (g) any other amounts due and payable by the Debtor hereunder on the dates required by the terms of the Plan. The Debtor shall execute any and all other or further agreements or documents necessary or proper in order to effectuate the transfer of the Distributable Cash or the Creditor Trust Assets into the Creditor Trust and the Class 5A Escrow as applicable, or as necessary or proper for the Creditor Trustee to administer the Creditor Trust Assets or Hahn Loeser to administer the Class 5A Escrow, subject in all events to the terms of this Plan. Debtor in his sole discretion may prepay without penalty any or all of the Net Player Contract Earnings Share payments. Debtor may in his sole discretion be released from the NHL Escrow Rebate Share payment obligations by paying the Creditor Trust $50,000, provided such payment is made on or before April 30, 2020. Once all claims to be paid out of the Creditor Trust and the Class 5A Escrow have been paid in full in accordance with the terms of the Plan, any surplus shall be returned to Debtor and Debtor shall have no further obligation to make any payments to or for the benefit of the Creditor Trust or the Class 5A Escrow.

8.04 Litigation Claims. The Litigation Claims shall be deemed automatically contributed to the Creditor Trust immediately upon the last to occur of (a) the Effective Date; and (b) execution of the Creditor Trust Agreement.

8.05 Vesting of Assets in the Debtor. All assets, interests, and other property of the Debtor that are not Creditor Trust Assets or required to be deposited into the Class 5A Escrow, including without limitation the Administrative Holdback, the Off-season Holdback, any Debtor Rebates, the CapStar Collateral, and the Retained Litigation Claims, shall remain property of the Debtor free and clear of any and all liens, claims, interests, or encumbrances existing or arising on or before the Effective Date; and except as otherwise provided under this Plan, shall not be used to fund, in whole or in part, any obligations under this Plan unless the Debtor otherwise determines in the Debtor's sole and absolute discretion.

8.06 Estimation of Claims. Debtor reserves all of his rights to estimate the amount of any and all claims as may be necessary to confirm the Plan.

20

8.07    Disputed Secured Claim Reserve and Secured Claim Rebates.

(a) Disputed Secured Claim Motions.  EOT and RFF shall have through and including the fourteenth (14th) day after the Effective Date (such deadline, the "Disputed Secured Claim Reserve Motion Deadline") in which to file a motion seeking to establish a Disputed Secured Claim Reserve (a "Disputed Secured Claim Reserve Motion").  If neither EOT nor RFF file a Disputed Secured Claim Reserve Motion on or before the Disputed Secured Claim Reserve Motion Deadline, then the Effective Date Holdback will be disbursed to the Creditor Trust and the Class 5A Escrow on a pro rata basis as provided above on or before the fourteenth (14th) day after the Effective Date.

(b) Disputed Secured Claim Rebates.  If EOT or RFF file a Disputed Secured Claim Reserve Motion on or before the Disputed Secured Claim Reserve Motion Deadline, then, within three (3) business days after entry of any Final Order determining that any amount of the Effective Date Holdback does not or shall not be required to comprise the Disputed Secured Claim Reserve, such amount shall be disbursed by Hahn Loeser as follows: 80% to the Creditor Trust and the Class 5A Escrow on a pro rata basis as provided above (the "Disputed Secured Claim Rebate") and 20% to the Debtor (the "Debtor Disputed Secured Claim Rebate").

(c) Disputed Secured Claim Reserve Rebates.  Within three (3) business days after the entry of any Final Order determining the amount, nature, extent, validity, or priority of an alleged Secured Claim of EOT or RFF, any amount of the Disputed Secured Claim Reserve not ordered to be paid or further escrowed for the benefit of EOT or RFF, as applicable, pursuant to such Final Order shall be disbursed by Hahn Loeser as follows: 80% to the Creditor Trust and the Class 5A Escrow on a pro rata basis as provided above (the "Disputed Secured Claim Reserve Rebate" and, together with the Disputed Secured Claim Rebate, the "Creditor Rebates") and 20% to the Debtor (the "Debtor Disputed Secured Claim Reserve Rebate" and, together with the Debtor Disputed Secured Claim Rebate, the "Debtor Rebates" and, together with the Creditor Rebates, the "Secured Claim Rebates").

(d) Use of Debtor Rebates.  Debtor Rebates shall be applied first to professional fees and expenses Debtor incurs after the Effective Date related to the alleged Secured Claims of EOT or RFF.

## ARTICLE IX
## GENERAL PROVISIONS

9.02    Effective Date of Plan. The "Effective Date" of this Plan shall be the eleventh business day following the date of the entry of the Confirmation Order; however, if a stay of the Confirmation Order is in effect on that date, then the Effective Date shall be the first business day after that date on which no stay of the Confirmation Order is in effect, provided

8570041.1

that the Confirmation Order has not been vacated.

9.03 Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

9.04 Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon, and will inure to the benefit of the successors or assigns of such entity.

9.05 Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

9.06 Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Bankruptcy Code, Bankruptcy Rules, or Local Rules), the laws of the State of Ohio govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

## ARTICLE X
## DISCHARGE

10.01 Discharge. Confirmation of this Plan does not discharge any debt provided for in this Plan and Debtor shall not receive a discharge until completion of all payments required by Debtor under this Plan. The Debtor will not be discharged from any debt excepted from discharge under section 523 of the Bankruptcy Code, except as provided in rule 4007(c) of the Federal Rules of Bankruptcy Procedure. Upon completion of all payments required by Debtor under this Plan, any and all debts, claims, causes of action, or liabilities of any kind of the Debtor existing as of the Petition Date shall be discharged and the holders of any such debts, claims, causes of action, or liabilities shall be forever enjoined from enforcing the same against the Debtor or any of the Debtor's assets or property.

*[Signatures on next page]*

8570041.1

Respectfully submitted by:


*/s/ Marc J. Kessler*

Dated:    June 17, 2016

Marc J. Kessler (0059236)
Daniel A. DeMarco (0038920)
Rocco I. Debitetto (0073878)
Hahn Loeser & Parks LLP
65 E. State Street, Suite 1400
Columbus, Ohio 43215
Telephone:    (614) 233-5168
Facsimile:    (614) 221-5909
E-mail:        mkessler@hahnlaw.com
               dademarco@hahnlaw.com
               ridebitetto@hahnlaw.com

*Counsel for Debtor and Debtor-in-Possession*

8570041.1

## Exhibit 5

## NOTICE OF PLAN SUPPORT

The undersigned Lender hereby agrees to:

    1.  Vote to accept the Plan; and

    2.  Accept treatment under Class 5A.

Lender's Proof of Claim amount is $ _____.

        "Lender"

        Name: _____

        By:     _____

        Title: _____

        Date: _____

24

## Exhibit 5A

## SETTLING LENDERS ACCEPTING CLASS 5A TREATMENT:

|  | **LENDER** | **PROOF CLAIM AMOUNT** | **CLASS 5A SHARE** |
|---|---|---|---|
| 1. | Blum | $ 1,1719,41.60 | |
| 2. | Capital Enterprises | $ 3,075,830.10 | |
| 3. | Capital Financial | $ 3,429,750.00 | |
| 4. | CapStar | $ 372,674.34 | |
| | Total Proof of Claims | $ 8,050,196.04 | |
| | Initial Settling Lenders Share of Class 5A Amount | | $ 2,817,568.61 |